UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PEGGY PHELPS, a single person; JUDY GRANT, a single person; DIANA HOUSE, a single person; SUSAN MATTHEWS, a single person; ANGELA CREEL, a single person; MICHELLE CORY, a single person; JEFF ROWLING and BRENDA ROWLING, husband and wife, and the marital community thereof; CHARLES DOONAN, a single person; and THARA EANG and CRYSTAL EANG, husband and wife, and the marital community thereof,<br><br>Plaintiffs,<br><br>v.<br><br>OCEAN SHORES ASSOCIATES, L.P., a Washington limited partnership; and OLYMPIC MANAGEMENT CO., a Washington corporation; and THE UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. C06-5512RJB<br><br>ORDER |

This matter comes before the Court on Defendant Olympic Management Company's Motion for Summary Judgment Re: Indemnity (Dkt. 19) and the United States' Cross Motion to Dismiss, or in the Alternative, for Summary Judgment (Dkt. 25). The Court has reviewed all documents filed in support of and in opposition to these motions, has reviewed the entire file, and is fully advised.

ORDER
Page - 1

## I.   BASIC and PROCEDURAL FACTS

Originally filed in Grays Harbor County Washington, this action was removed to this Court on September 7, 2006 by the United States of America. Dkt. 1. The case concerns allegations of personal injury and property damage caused by the conditions at a federally subsidized apartment complex for very low, low, and moderate income families. Dkt. 4-2, at 3-21. The apartment complex, known as the Dune Grass Apartments, is located at 807 Anchor Avenue NW, Ocean Shores, Washington. Dkt. 4-2, at 4. Plaintiffs allege that the "moisture related problems, including mold intrusion, bird infestation, and methamphetamine contamination have rendered the units of Plaintiffs uninhabitable or partially uninhabitable, and these conditions pose actual or potential health and safety hazards to the Plaintiffs." Dkt. 4-2, at 17. Plaintiffs allege that Defendants had actual and/or constructive knowledge of these conditions. Dkt. 4-2. Plaintiffs assert five claims: 1) breach of the Landlord Tenant Act, RCW 59.18, *et seq.*, 2) breach of contract, 3) breach of the implied warranty of habitability, 4) premises liability and negligence, and 5) negligent infliction of emotional distress. Dkt. 4-2, at 11-19.

The First Amended Complaint names the following Defendants: Ocean Shores Associates, L.P., ("Ocean Shores"), Olympic Management Company ("Olympic"), and the United States of America. Dkt. 4-2. A brief review of the history of the apartment complex and the various entities involved with it is helpful. The First Amended Complaint alleges that in 1987 and 1988, Defendant Ocean Shores entered into an agreement or agreements with the Rural Housing Service for the United States Department of Agriculture ("Rural Housing Service") in connection with the financing, construction and operation of the apartment complex. Dkt. 4-2 at 11. Ocean Shores is a Washington limited partnership, with Michael A. McKean and Northwest Community Housing Corporation originally as General Partners. Dkts. 25-2, and 25-3. In 1996, the apartment complex was placed in receivership, and the Rural Housing Service was appointed Receiver for this and several other apartment complexes. *United States of America v. McKean,* Case No. 96-5879-FDB, (Western District of Washington at Tacoma 1996). As Receiver, the Rural Housing Service was given "all powers, authorities, rights and privileges" previously possessed by the general partners and managing general partners of the "partnerships under applicable state and federal law and by the partnership agreement of said partnerships, in addition to all powers and authority conferred upon the Receiver by the provisions of 28 U.S.C. § 754." Dkt. 25-3, at 2. Michael A. McKean and

Northwest Community Housing Corporation were dismissed as general partners and managing partners. *Id*. Further, the Rural Housing Service, as Receiver, was to "assume and control the operation of the partnership" and was to "pursue and preserve all of its claims and assets." *Id*.

In 1996, Defendant Olympic Management Company ("Olympic") began managing the apartment complex. Dkt. 20, at 2. Beginning in 1999, management agreements between Olympic, as "Agent," and Ocean Shores, as "Owner," were executed for the management of the apartment complex. *Id*. The record contains the 2000 agreement, and the signature block reads:  Owner: Ocean Shores Associates, By: Patrick N. Sheridan, for USDA - Rural Development, Receiver, Title: Assistant Deputy Administrator Multi-Family Housing. Dkt. 20, at 16. (The United States' Answer indicates that Rural Development is a program within the Department of Agriculture (Dkt. 8, at 2)).  Under the management agreement, Olympic, as "Agent" is responsible for day to day management of the apartment complex including: marketing and renting the units, producing reports, collecting the rent, creating a budget, and maintaining and repairing the buildings and grounds. Dkt. 20. The "Owner," is responsible under the management agreement for the "finances and the financial stability" of the apartment complex. Dkt. 20, at 14. Olympic is required to gain the "Owner's" approval for expenditures over $2,500 for maintenance and repairs. Dkt. 20, at 9. The record indicates that the no requests for maintenance and repairs were ever denied. Dkt. 26, at 2 and Dkt. 27.

The management agreement also contains a provision entitled "agent's indemnification," which appears fully below at page 7, line 3 of this opinion. Dkt. 20, at 14. Olympic relates that, based on the indemnity provision in the management agreement, it sent a letter to the Rural Housing Service tendering defense of this action and for indemnification of Olympic. Dkt. 21, at 2. Olympic also filed a cross claim for indemnification against the United States. Dkt. 9.

Olympic now moves for Summary Judgment on its cross claim, arguing that Rural Housing Service has a duty to indemnify and hold Olympic harmless pursuant to the terms of the management agreement. Dkt. 19. The United States opposes the motion, moves for dismissal of Olympic's cross claim for indemnification, or, in the alternative moves for Summary Judgment on that claim. Dkt. 25. The United States argues that 1) Olympic's agreement is with Ocean Shores, not the United States, therefore its recovery is limited to the assets of Ocean Shores, 2) Olympic does not have a valid claim for

indemnification for its own negligence under Washington statutory law (RCW § 4.24.115) and so Olympic's cross claim fails to state a claim upon which relief can be granted, 3) Olympic does not have a valid claim for indemnification for its own negligence under common law, 4) the indemnification provision in the management agreements apply only to losses resulting from inadequate funding of the apartment complex, which has not been alleged, and 5) this Court does not have jurisdiction over Olympic's cross-claim against the United States for contractual indemnification. Dkt. 25. Olympic replies: 1) the United States is not immune from suit because it is more than simply a receiver: it is responsible as an owner, receiver, and mortgagee, 2) the United States cannot recover under indemnity principles because there is no evidence that Olympic was negligent, 3) the indemnification provision is enforceable and includes the claims that are the subject of this suit, 4) the Court should exercise supplemental jurisdiction over the cross claims, and 5) the United States is judicially estopped from challenging the jurisdiction of this Court. Dkt. 33. The United States Replies: 1) it is not the owner of the apartment complex, it is the Receiver and must have statutory and judicial authority to manage the assets, 2) the United States as mortgagee did not assume any obligation to indemnify the managing agent for all liability, 3) the United States is not responsible as "administrator" of a low-income rental program, 4) the potential liability of the United States as receiver is limited, and 5) Olympic's evidence regarding its negligence, or lack thereof, is irrelevant. Dkt. 56.

    This opinion will first address whether it has jurisdiction over Olympic's cross-claim against the United States for contractual indemnification, and then will address the motions pertaining to Olympic's cross claim for indemnification against the United States.

## II. DISCUSSION

### A.  JURISDICTION TO CONSIDER CROSS CLAIM FOR INDEMNITY

    The United States, as sovereign, is immune from suit except where it consents to be sued. *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941). The Tucker Act, 28 U.S.C. § 1491 *et. seq.*, waives sovereign immunity for "any claim against the United States founded . . . upon any express or implied contract with the United States," vesting jurisdiction to hear such claims in the United States Court of Federal Claims. Pursuant to 28 U.S.C. § 1346 (a)(2), district courts have original jurisdiction, concurrent with the United States Court of Federal Claims, of any civil action or claim against the United States, not exceeding

$10,000 in amount, founded upon "any express or implied contract with the United States." Further, the statute provides that "[t]he jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section." 28 U.S.C. § 1346 (c).

At this stage in the litigation, Olympic has not indicated the amount they seek to recover in the cross claim. To the extent that Olympic seeks less than $10,000, this Court has jurisdiction over the claim under 28 U.S.C. § 1346 (a)(2). To the extent that Olympic seeks more than $10,000 in indemnity from the United States, this Court does not have jurisdiction to consider the claim, and the claim should be dismissed. Olympic's argument, that the United States is barred by the doctrine of judicial estoppel from arguing that this Court does not have jurisdiction to hear this claim because it is also making a cross claim for indemnity, does not change the outcome. The scope of any waiver of sovereign immunity is strictly construed in favor of the government. *Orff v. U.S.*, 358 F.3d 1137, 1142 (9th Cir. 2004). The statute's plain language indicates that this Court does not have jurisdiction to hear contract claims for amounts over $10,000 against the United States.

In the event that Olympic is asserting a cross claim for less than $10,000, this opinion will address Olympic's Motion for Summary Judgment. The Court will also consider the United States Cross Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

**B.     SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## C. UNITED STATES DUTY TO INDEMNIFY

Under 28 U.S.C. § 754, a receiver appointed in any civil action involving property, real, personal, or mixed, shall be vested with "complete control of all such property with the right to take possession thereof." A trustee or receiver of any property shall have the capacity to sue and be sued "with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(b). Traditionally, "[a]ctions against the receiver are in law actions against the receivership or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official, and not personal, and judgments against him as receiver are payable only from the funds in his hands." *McNulta v. Lockridge,* 141 U.S. 327 (1891). Over time, the courts have eroded this rule, and now a receiver is personally liable if it willfully and deliberately breached a duty. *Mosser v. Darrow,* 341 U.S. 267 (1951). Moreover, in the Ninth Circuit, a bankruptcy trustee is not liable for mistakes in judgment where discretion is allowed, but he or she is liable "for not only intentional but also negligent violation of duties imposed upon him by law." *In re Rigden*, 795 F.2d 727, 730 (9th Cir. 1986). Although the trustee in *In re Rigden* was a trustee in a bankruptcy, the parties do not assert that this situation is sufficiently different to warrant a different standard for the receiver here.

Olympic's cross claims against the United States is based on the following language in the management agreement:

> <u>Agent's Indemnification</u>.  Notwithstanding any provision of this Agreement or any obligation of Agent hereunder, it is understood and agreed:  (a) that Owner has assumed and will maintain its responsibility and obligation throughout the term of this Agreement for the finances and the financial stability of the Project; and (b) that Agent shall have no obligation, responsibility or liability to fund authorized Project costs, expenses, or accounts other than those funds generated by the Project itself or provided to the Project or to Agent by Owner.  In accordance with the foregoing, Owner agrees that Agent shall have the right at all times to secure payment of its compensation, as provided for under Paragraph VII A of this Agreement, from the Operating and Maintenance Account, immediately when such compensation is due and without regard to other Project obligations or expenses provided the Agent has satisfactorily discharged all duties and responsibilities under this Agreement.  Moreover, Owner hereby indemnifies Agent and agrees to hold it harmless with respect to Project costs, expenses, accounts, liabilities and obligations during the term of this Agreement and further agrees to guarantee to Agent the payment of its compensation under Paragraph VII A of this Agreement during the term of this Agreement to the extent that the Project's Operating and Maintenance Account is insufficiently funded for this purpose.  Failure of Owner at any time to abide by and to fulfill the foregoing shall be a breach of this Agreement entitling Agent, at its option, to terminate this Agreement.

Dkt. 20, at 14, Section VII., Paragraph C.  In it's cross claim, Olympic alleges that "[a]s the acting owner of the property, the United States is contractually obligated to defend and hold harmless Olympic Management.  Additionally, the United States is contractually obligated to indemnify Olympic Management from any judgment entered against it in this litigation in the unlikely event that occurs."  Dkt. 9, at 8.

### 1.  <u>Olympic's Motion for Summary Judgment</u>

To the extent that Olympic seeks indemnity from the United States, as receiver, for the apartment complex's "costs, expenses, accounts, liabilities and obligations" Olympic's Motion for Summary Judgment should be denied. Olympic's contractual agreement (the management agreement) is with <u>Ocean Shores</u>, who is the "Owner," of the apartment complex, not with the United States, who is the receiver.  Olympic presents no evidence that the United States is the legal owner of the apartment complex, but argues that the United States acts as an owner. Dkt. 33, at 5.  The record indicates that the United States' actions reflect the powers given to it as receiver, with "all powers, authorities, rights and privileges" previously possessed by the general partners of Ocean Shores, and were not actions as an absolute owner. These powers were given in the Court's orders granting the Rural Housing Service its powers as receiver in *United States of America v. McKean,* Case No. 96-5879-FDB, (Western District of Washington at Tacoma 1996).  Olympic's contractual indemnity claims may properly be made against Ocean Shores, as the "Owner" in the management agreement but not against the United States, the receiver of the apartment

ORDER
Page - 7

1 complex. Dkt. 25-3, at 2.

### 2. United States Motion for Summary Judgment

Further, the United States' Motion for Summary Dismissal of Olympic's cross claim for indemnity should be granted and Olympic's cross claim should be dismissed. Olympic claims that the United States is obligated to defend, hold harmless, and indemnify it. Dkt. 9, at 8. By the cross Motion for Summary Judgment, the United States puts Olympic on it's proof: that is Olympic must "set forth specific facts showing that there is a genuine issue for trial," in order to defeat the motion. Fed. R. Civ. P. 56(e). Olympic points to no evidence in the record that indicates that the United States, as receiver, acted negligently or improperly in its dealings with Olympic. In fact, the United States has offered evidence that it, as receiver, granted each request Olympic made for funds to maintain and repair the apartment complex. Dkt. 26, at 2 and Dkt. 27. Here, Olympic fails to show that there are genuine issues of fact as to whether the United States, as receiver, "intentionally or negligently violated duties imposed upon it by law" in a manner which could lead to its' being liable to Olympic. *In re Rigden*, at 730. In contrast, the United States has shown that there are no genuine issues of material fact, and that it is entitled to a judgment as a matter of law. The United States' Cross Motion for Summary Judgment should be granted.

### D.  CONCLUSION

There being no remaining material issues of fact on Olympic's cross claim against the United States for indemnity, Olympic's Motion for Summary Judgment re: Indemnity (Dkt. 19) should be denied, and the United States Cross Motion to Dismiss or, in the Alternative, Motion for Summary Judgment should be granted and Olympic's cross claim against the United States should be dismissed. Although Olympic argues that the United States cannot recover under indemnity principals because there is no evidence that Olympic was negligent, there is no motion before the Court on that issue, and in any event, appears premature at this stage in the litigation.

### III. ORDER

Therefore, it is hereby, **ORDERED** that:

- Defendant Olympic Management Company's Motion for Summary Judgment Re: Indemnity (Dkt. 19) is **DENIED**;
- United States' Cross Motion to Dismiss, or in the Alternative, for Summary Judgment (Dkt. 25) is **GRANTED,** Olympic Management Company's cross claim against the United States is **DISMISSED**.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 9th day of July, 2007.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge